**Electronically Filed
Intermediate Court of Appeals
CAAP-19-0000211
21-APR-2020
08:54 AM**

NO. CAAP-19-0000211

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

STATE OF HAWAI'I, Plaintiff-Appellee,
v.
CODY M. SAFADAGO, Defendant-Appellant

APPEAL FROM THE CIRCUIT COURT OF THE FIFTH CIRCUIT
(Case No. 5CPC-17-0000167)

MEMORANDUM OPINION
(By: Ginoza, Chief Judge, Chan and Hiraoka, JJ.)

Defendant-Appellant Cody M. Safadago (**Safadago**) was charged with (1) Theft in the Second Degree by Shoplifting and (2) Attempted Theft in the Third Degree by Shoplifting. The charges were based on two incidents that took place in Havaiki Oceanic and Tribal Art (**Havaiki**), a retail shop in Hanalei, Kaua'i. A jury found him guilty as charged. The Circuit Court of the Fifth Circuit[1] entered a Judgment of Conviction and Sentence (**Judgment**) on March 6, 2019. Safadago appealed. His opening brief states the following points of error:

     A. denial of his motion in limine no. 1 to exclude any evidence of the value of the items he stole;

     B. denial of his motion in limine no. 2 to exclude statements he made to one of the Havaiki co-owners;

     C. denial of his motion to suppress all evidence obtained after he was arrested;

     D. following an improper procedure for deciding his motion to suppress;

---

[1] The Honorable Kathleen N.A. Watanabe presided.

E.    refusal to admit evidence of a statement made by a police officer to Dylan Thomas **(Thomas)**, one of the Havaiki co-owners;

F.    denial of his motions in limine nos. 3 and 4 to exclude security videos from January 4, 2017, and January 7, 2017;

G.    refusal to give his proposed jury instructions;

H.    denial of his motion for new trial; and

I.    denial of his "Prejudicial Joinder Motion" for separate trials on the two counts.

Although not identified as a point of error, Safadago's opening brief argues that the circuit court plainly erred by failing to advise him of his rights under Rule 48 of the Hawai'i Rules of Penal Procedure **(HRPP)** and his constitutional right to a speedy trial. As we explain below, the circuit court erred by denying Safadago's motion for new trial. We vacate the Judgment and remand for a new trial.

Safadago's points of error challenge, among other things, pretrial orders entered by the circuit court after it conducted an evidentiary hearing. The orders contained findings of fact. Safadago has not challenged any finding of fact in the manner required by Rule 28(b)(4)(C) of the Hawai'i Rules of Appellate Procedure **(HRAP)**. Accordingly, the findings of fact are binding upon Safadago in challenging those orders. Kawamata Farms, Inc. v. United Agri Prods., 86 Hawai'i 214, 252, 948 P.2d 1055, 1093 (1997) (holding that appellants who failed to comply with HRAP Rule 28(b)(4)(C) waived any challenge to findings of fact, and unchallenged findings of fact were binding upon appellants). The unchallenged findings of fact provide some context for this case:

1.    On January 7, 2017, [Safadago] entered into Havaiki LLC.

2.    While there Dylan Thomas recognized [Safadago] from a prior theft incident.[2]

---

[2]    Victoria Juvrud and Thomas are two of the owners of Havaiki. On January 5, 2017, Juvrud arrived at the shop and discovered that six bracelets that had been on display the day before were missing from the display case.
(continued...)

3.    Dylan Thomas compared the surveillance footage from the prior incident to [Safadago] and thought it was the same person.

4.    Dylan Thomas told [Safadago] that he was going to go outside and throw out some boxes.

5.    Dylan Thomas then saw [Safadago] re-enter the store.

6.    Dylan Thomas followed [Safadago] into the store.

7.    Dylan Thomas saw [Safadago] stuffing merchandise into his pocket.

8.    Dylan Thomas used his left arm to hold [Safadago]'s right arm and told [Safadago] to put the merchandise back.

9.    [Safadago] removed some of the merchandise [from his pocket].

10.    Dylan Thomas told [Safadago] to take all of the merchandise out of his pocket.

11.    [Safadago] removed more merchandise [from his pocket].

12.    Dylan Thomas told [Safadago] that he knew [Safadago] had stolen merchandise before and told [Safadago] that [Safadago] could either return the merchandise or Dylan Thomas would call the police.

13.    [Safadago] told Dylan Thomas that he had already sold some of the merchandise but would retrieve the merchandise from the pavilion area where he was staying.

14.    Dylan Thomas asked [Safadago] for his identification.

15.    [Safadago] said that he did not have any identification.

16.    Dylan Thomas told [Safadago] that if he did not provide identification then Dylan Thomas would call the police.

17.    [Safadago] gave Dylan Thomas his identification.

18.    [Safadago] left the store after Dylan Thomas told him that he had until the afternoon of the following day to return the merchandise.

19.    Dylan Thomas is not and has never been a police officer.

20.    Dylan Thomas did not give [Safadago] his <u>Miranda</u> rights.

21.    Dylan Thomas did not frisk or pat down [Safadago].

---

[2]    (...continued) Juvrud told Thomas that the bracelets were missing. Thomas reviewed Havaiki's security video from January 4, 2017. He found the point in the video when the bracelets no longer appeared on the display. An unidentified man was at the display case at the time.

22.   Dylan Thomas did not put his hands into [Safadago]'s
      pockets at any time.

(Footnote added.)

### A.   The circuit court's denial of motion in limine no. 1 was not reversible error.

A motion in limine requests a pretrial order enjoining opposing counsel from asking certain questions or eliciting certain evidence at a later jury trial.  Kobashigawa v. Silva, 129 Hawai'i 313, 321-22, 300 P.3d 579, 587-88 (2013).  The denial of a motion in limine to exclude questions or evidence is an interlocutory order subject to reconsideration when the question is actually asked, or the evidence is actually offered, during the trial.  The "denial of a motion in limine to exclude, in itself, is not reversible error.  The harm, if any, occurs when the evidence is improperly admitted at trial."  Id. at 322, 300 P.3d at 588 (cleaned up).  Safadago's statement of the points of error does not contain "a quotation of the grounds urged for the objection and the full substance of the evidence admitted" at trial, as required by HRAP Rule 28(b)(4)(A).  We disregard this point of error.  Kakinami v. Kakinami, 127 Hawai'i 126, 144 n.16, 276 P.3d 695, 713 n.16 (2012).

In addition:

> [W]hen the court cannot render an unequivocal pretrial
> ruling on the admissibility of the particular evidence
> because it must wait until foundational prerequisites are
> established at trial or a proper trial record is otherwise
> first developed, the court should accordingly refrain from
> rendering a pretrial ruling and defer such ruling for trial.
> If the trial court must defer ruling on the motion in
> limine, its decision should be expressly communicated to the
> parties and placed on the record.

Kobashigawa, 129 Hawai'i at 325, 300 P.3d at 591 (cleaned up).  Safadago's motion in limine no. 1 requested exclusion of "any State evidence regarding the value of any allegedly stolen items."  The circuit court's order denying the motion stated:

> The issues in [Safadago]'s Motion in Limine #1: To Prevent
> Any Evidence of Valuation of Any Items in Count 1, filed on
> January 17, 2018 are issues for trial and are not properly
> before the Court as a Motion in Limine.

It was appropriate for the circuit court to deny the motion in limine; the admissibility of evidence of value would depend upon

whether the State could lay a foundation for the evidence. Safadago's opening brief does not specify what evidence of value was admitted at trial over his objection. He has waived any evidentiary error concerning the value of any allegedly stolen items.

### B. The circuit court's denial of motion in limine no. 2 was not reversible error.

Safadago's motion in limine no. 2 requested exclusion of statements he made to Thomas (one of the co-owners of Havaiki) after Thomas caught him putting merchandise into his pocket. The "denial of a motion in limine [to exclude], in itself, is not reversible error." Kobashigawa, 129 Hawai'i at 322, 300 P.3d at 588. Safadago's statement of this point of error does not contain "a quotation of the grounds urged for the objection and the full substance of the evidence admitted" at trial, as required by HRAP Rule 28(b)(4)(A). We disregard this point of error. Kakinami, 127 Hawai'i at 144 n.16, 276 P.3d at 713 n.16.

### C. The circuit court did not err by denying the motion to suppress.

Safadago argues that he was "illegally" arrested by Thomas, that he was not committing a crime when he was arrested, and his "statements should have been suppressed because of the illegal arrest and being forced to answer questions without being Mirandized."[3]

Hawaii Revised Statutes (**HRS**) § 803-3 (2014) provides:

> Anyone in the act of committing a crime, may be arrested by any person present, without a warrant.

HRS § 708-830 (2014), titled "Theft," provides in relevant part:

> A person commits theft if the person does any of the following:
>
> . . . .

---

[3] See Miranda v. Arizona, 384 U.S. 436, 444, 471 (1966) (holding that before any custodial interrogation, the suspect must be warned that they have the right to remain silent, that any statement they do make may be used as evidence against them, and that they have the right to consult with a lawyer, either retained or appointed, and to have the lawyer with them during the interrogation).

> (8)    Shoplifting.
>
>> (a)    A person conceals or takes possession of the goods or merchandise of any store or retail establishment, with intent to defraud.

HRS § 705-500 (2014), titled "Criminal attempt," provides in relevant part:

> (1)    A person is guilty of an attempt to commit a crime if the person:
>
> .  .  .  .
>
>> (b)    Intentionally engages in conduct which, under the circumstances as the person believes them to be, constitutes a substantial step in a course of conduct intended to culminate in the person's commission of the crime.

After Thomas told Safadago (whom Thomas suspected was the person thought to have previously stolen merchandise from Havaiki) that he was going to step away from the shop, he saw Safadago quickly re-enter the shop, pull items off the display shelf, and conceal them in his pocket.  We conclude that it was reasonable for Thomas to believe that Safadago was in the act of committing or attempting to commit the crime of theft by shoplifting and the element of immediacy justified the "citizen's arrest"[4] of Safadago.  State v. Keawe, 107 Hawaiʻi 1, 6, 108 P.3d 304, 309 (2005) (holding that HRS § 803-3 envisions a situation in which a crime is in progress and, thus, the element of immediacy justifies the departure from the general warrant requirement in HRS § 803-1 (2014) and Article I, section 7 of the Hawaiʻi Constitution).

Safadago cites no authority in support of his argument that a "private citizen" is obligated to advise an arrestee of their Miranda rights before a custodial interrogation.  To its

---

[4]    Thomas arguably never "arrested" Safadago.  HRS § 803-6 (2014) provides, in relevant part:

> (a)    .  .  . [I]f the person makes the arrest without warrant in any of the cases in which it is authorized by law, the person . . . shall **require the party arrested to submit and be taken to the police station** or judge.  This done, the arrest is complete.

(Emphasis added.)  Thomas did not threaten to report Safadago to the police until after Safadago admitted taking merchandise from Thomas's shop, and Thomas ultimately allowed Safadago to leave the shop without calling the police.

credit, the State cites to <u>State v. Bowe</u>, 77 Hawai'i 51, 881 P.2d 538 (1994). In that case, police suspected then-University of Hawai'i basketball player Troy Bowe of being involved in a fight at one of the dormitories on campus. The police contacted then-men's basketball head coach Riley Wallace and asked him to help them interview Bowe. Coach Wallace instructed Bowe to go to the police station and make a statement. Bowe believed that if he did not follow Coach Wallace's instructions he would be suspended from the basketball team and his athletic scholarship could be revoked. Wallace accompanied Bowe to the police station. Bowe was given <u>Miranda</u> warnings, waived his right to remain silent and, while being interrogated, admitted assaulting the complaining witness. The circuit court granted Bowe's motion to suppress his confession. The state appealed. The Hawai'i Supreme Court affirmed, but did not rule that a civilian must advise a person arrested by the civilian under HRS § 803-3 of their <u>Miranda</u> rights. Rather, the supreme court held that under article I, sections 5 and 10 of the Hawai'i Constitution, the coercive conduct of a private person may be sufficient to render a defendant's confession involuntary. <u>Id.</u> at 57, 881 P.2d at 544. However, the supreme court also stated:

> Nevertheless, we acknowledge that some sort of state action is required to support a defendant's claim that [their] due process rights were violated. . . .
>
> [A]lthough no state action is involved where an accused is coerced into making a confession by a private individual, we find that the state participates in that violation by allowing the coerced statements to be used as evidence.

<u>Id.</u> at 59, 881 P.2d at 546.

In this case, Safadago has not shown that any confession was coerced by Thomas, nor has Safadago shown that evidence of any confession was actually elicited by the State at trial over his objection. We are not obligated to search the record for information that should have been provided by Safadago. <u>Haw. Ventures, LLC v. Otaka, Inc.</u>, 114 Hawai'i 438, 480, 164 P.3d 696, 738 (2007) (citing <u>Lanai Co. v. Land Use Comm'n</u>, 105 Hawai'i 296, 309 n.31, 97 P.3d 372, 385 n.31 (2004) (explaining that an appellate court "is not obligated to sift through the voluminous

record to verify an appellant's inadequately documented contentions.") (citations omitted). The police had no involvement when Safadago apparently or implicitly confessed his previous theft to Thomas. Safadago has not established any State involvement in the actual use of his confession at his trial. We find no reversible error in the circuit court's denial of Safadago's motion to suppress.

D.   **The procedure for deciding the motion to suppress was not improper.**

Safadago argues that he "tried to testify about/ challenge the lawfulness of his arrest without a warrant at the beginning of the motion" but the circuit court improperly let the State call Thomas as the first witness for the evidentiary hearing. He cites no authority for the proposition. We find no error by the circuit court. See State v. Crowder, 1 Haw. App. 60, 66, 613 P.2d 909, 914 (1980) ("Once [the defendant] challenged the lawfulness of the State's warrantless arrest and the search incidental thereto, the State had the burden of showing that the arresting officer had probable cause to make the arrest.") (citations omitted).

E.   **The circuit court did not err when it refused to admit evidence of a police officer's opinion.**

Safadago does not present a separate argument in support of this point of error, but touches on it in his argument about the denial of motion in limine no. 2. During the cross-examination of Thomas at the pretrial evidentiary hearing, Safadago's counsel asked whether the police officer who responded to Thomas's report told him that no crime had been committed by Safadago. The State objected. The circuit court sustained the objection. The statement at issue was made two days after Thomas caught Safadago in the store putting merchandise in his pocket; the police officer/declarant was not present at that time. No foundation for the officer's opinion was offered, and the issue was irrelevant to the proceedings. There was no error.

8

### F. The circuit court's denial of motions in limine nos. 3 and 4 was not reversible error.

These motions in limine sought to exclude the Havaiki security videos from January 4, 2017, and January 7, 2017. The "denial of a motion in limine [to exclude], in itself, is not reversible error." Kobashigawa, 129 Hawai'i at 322, 300 P.3d at 588. Safadago has not established that he objected when the State offered either of the videos as evidence during his trial, or that the circuit court erroneously overruled his objections at trial. The circuit court did not commit reversible error by denying motions in limine nos. 3 and 4.

### G. Safadago has waived any instructional error.

Safadago's statement of the points of error does not contain "a quotation of the [jury] instruction, given, refused, or modified, together with the objection urged at trial[,]" as required by HRAP Rule 28(b)(4)(B). We disregard this point of error. Kakinami, 127 Hawai'i at 144 n.16, 276 P.3d at 713 n.16.

### H. The circuit court erred by denying Safadago's motion for new trial.

On September 20, 2018, the jury found Safadago guilty as charged. That evening an email was sent to the Kaua'i prosecutor's office and Safadago's defense counsel, among others. The email stated:

> As an Officer of the Court I need to inform all parties and the Court of the following:
>
> I know one of the jurors that was in the Safadago theft trial. After the verdict was reached, I was informed that during deliberation and prior to verdict, a female juror told the other eleven jurors in the jury room that [Safadago] was the same individual that had killed a girl in Kapaa while driving a stolen vehicle. She also told the other jurors that when she saw the Washington Driver's License that was admitted as evidence in trial she realized or remembered that he was the same individual who was mentioned on Facebook as being a thief in the Hanalei area that people should be on the look out [sic] for, and for being the person who killed the local girl while driving a stolen vehicle.
>
> I was further told that the Foreperson told the other jurors they needed to inform the Bailiff of this information. However the Foreperson was then persuaded not to report it after the female said "she" could still be fair and impartial.

9

> Please note that I used to represent Mr. Safadago in his pending Manslaughter case until he requested I withdraw. So I did. However, I believe I do still owe him an [sic] duty of loyalty.

On September 24, 2018, Safadago filed a motion for new trial based on juror misconduct. The circuit court conducted an evidentiary hearing; eight of the twelve jurors testified. The circuit court denied the motion for new trial and entered the following findings of fact and conclusions of law:

### FINDINGS OF FACT

1. On October 10, 2018, [Safadago] brought in eight (8) jurors to testify, and all eight (8) did testify.

2. Four (4) of the jurors did not recall hearing any comment by another juror about other acts by [Safadago] or other statements about [Safadago] on Facebook.

3. The other four (4) jurors heard another juror comment, during deliberations, about other acts by [Safadago] or other statements about [Safadago] on Facebook.

4. That juror was told by other jurors that the information about [Safadago]'s other acts and other Statements about [Safadago] on Facebook were not relevant.

5. At least one juror took the initiative to stop the person from further commenting[.]

6. Majority of the jurors recall deliberating for at least a couple of hours if not more, and the comment(s) at issue by the one juror occurred early in deliberations.

7. After the one juror's comment(s) at issue were made all the jurors continued deliberations.

8. The jurors watched the surveillance video in evidence twice because they were weighing the evidence.

9. The jurors used the entirety of the deliberations to review and discuss the evidence.

10. All the witnesses testified credibly.

### CONCLUSIONS OF LAW

1. The initial burden is on [Safadago] to make a prima facie showing that there has been substantial prejudice to his right to a fair and impartial jury, and if that burden is sustained then the State has the burden of rebutting that presumption.

2. If the burden switches to the State the State must prove the prejudice was harmless beyond a reasonable doubt.

3. To make a prima facie showing that a juror's comments during the deliberations deprived him of the right to a fair trial and impartial jury [Safadago] must show that by an objective evaluation of the comment at issue that (1) an

10

improper comment was made, and (2) the comment was used as a circumstance against [Safadago].

4. The State concedes on the first prong, and the Court finds that a juror made an improper comment.

5. Regarding the second prong; however, [Safadago] did not show that the comment was used as a circumstance against [him.]

6. Because [Safadago] must show the second prong of test [sic] [Safadago] did not meet his burden of [sic] make a prima facie showing of [sic] that the juror's comment(s) during the deliberations deprived him of the right to a fair trial and impartial jury.

Conclusions of law nos. 1, 3, 5, and 6 are incorrect. When a motion for new trial is based upon juror misconduct, "[t]he defendant bears the initial burden of making a prima facie showing of a deprivation that could substantially prejudice [their] right to a fair trial by an impartial jury." State v. Chin, 135 Hawai'i 437, 443, 353 P.3d 979, 985 (2015) (cleaned up) (underscoring in original). In this case, the September 20, 2018 email to the prosecutor's office and defense counsel, as well as finding of fact no. 3, made a prima facie showing that Safadago's right to a fair trial by an impartial jury could have been substantially prejudiced. See State v. Keliiholokai, 58 Haw. 356, 569 P.2d 891 (1977) (noting the potential that jurors read news article about defendant's prior convictions could be substantially prejudicial); State v. Bailey, 126 Hawai'i 383, 271 P.3d 1142 (2012) (noting that juror's statements to other jurors concerning defendant's prior convictions was sufficient to show potential prejudice to defendant's right to a fair trial by an impartial jury).

"Once the defendant makes a prima facie showing of a deprivation, a rebuttable presumption of prejudice is raised . . . that triggers the court's obligation to investigate the totality of the circumstances." Chin, 135 Hawai'i at 443, 353 P.3d at 985 (cleaned up). "An investigation into the totality of circumstances includes an individual examination of potentially tainted jurors, outside the presence of the other jurors, to determine the influence, if any, of the extraneous matters." Id. at 448, 353 P.3d at 990 (cleaned up). "To overcome the presumption of prejudice, the State must prove that the outside

influence on the jury was harmless beyond a reasonable doubt." Id. (citations omitted). "The trial court's investigation of the totality of the circumstances is a necessary prerequisite to finding that the misconduct was harmless beyond a reasonable doubt." Id. (citation omitted).

In this case, four of the jurors were not called to testify at the evidentiary hearing. "Because the right to an impartial jury in a criminal trial is so fundamental to our entire judicial system, it therefore follows that a criminal defendant is entitled to *twelve* impartial jurors." State v. Pitts, 146 Hawai'i 120, 129, 456 P.3d 484, 493 (2019) (emphasis added). The transcript of proceedings indicates that the juror who mentioned the fatal automobile accident and the Facebook post did not testify during the evidentiary hearing, nor was she identified by any of the jurors who did testify. The circuit court did not have before it the totality of circumstances surrounding the alleged juror misconduct. See State v. Williamson, 72 Haw. 97, 104, 807 P.2d 593, 597 (1991) ("[B]y not inquiring into the identity of the juror who brought the dictionary and obtaining a personal explanation from [them] as to its use, the trial court did not have before it the totality of circumstances surrounding the misconduct to decide whether it was harmless."). Having failed to call four of the jurors, the State did not sustain its burden of proving that the outside influence on the jury was harmless beyond a reasonable doubt. The circuit court erred by denying Safadago's motion for new trial.

### I.     Safadago did not preserve his "Prejudicial Joinder Motion" for appeal.

Safadago argues that the circuit court erred in denying his Prejudicial Joinder Motion[5] because Count I and Count II involved "two similar offenses that happened on two separate days[,]" and "to try [him] on two different theft charges at the same time is simply unfair." Safadago filed his Prejudicial Joinder Motion pursuant to HRPP Rules 8 and 14, among others.

---

[5]     The motion should have been filed as a motion to sever the charges for separate trials.

12

The order denying the motion was entered on May 24, 2018, before the start of trial. The record on appeal contains no indication that Safadago renewed his Prejudicial Joinder Motion either at the close of the State's case or at the close of all evidence. "[A] defendant's motion under [HRPP] Rule 14 for a severance of counts due to prejudicial joinder must be renewed at the close of the prosecution's evidence or at the conclusion of all the evidence and unless made at that time it is deemed waived." State v. Matias, 57 Haw. 96, 98-99, 550 P.2d 900, 902 (1976) (citations omitted) (underscoring added); see also State v. Balanza, 93 Hawai'i 279, 288, 1 P.3d 281, 290 (2000) (noting that failure to renew a pretrial motion for severance waives the claim). The Balanza court highlighted that "[t]his is due in part to the difficulty of making a finding of prejudice before trial." Id. at 288, 1 P.3d at 290 (citing Matias, 57 Haw. at 98, 550 P.2d at 902). Safadago's "[f]ailure to renew the request for severance during the course of trial at least suggests that the prejudice now asserted to have resulted from the joinder may not have seemed so substantial to [Safadago] in the context of the trial[ ]." Matias, 57 Haw. at 100, 550 P.2d at 903 (citation omitted). Safadago's claim of error on this point is waived. Id.

> ### J.   The circuit court did not plainly err by allegedly failing to inform Safadago of his right to speedy trial.

Finally, Safadago contends that the circuit court violated HRPP Rule 48. He does not make a Rule 48 calculation of excluded periods under HRPP Rule 48(c) or (d); his only argument is that the circuit court never advised him that he had a right (constitutional or under HRPP Rule 48) to a speedy trial. The only case he cites for that proposition is State v. Libero, 103 Hawai'i 490, 83 P.3d 753 (App. 2003), abrogated by State v. Frisbee, 114 Hawai'i 76, 156 P.3d 1182 (2007). In Libero we recognized that a criminal defendant's right to a speedy trial is guaranteed by the United States Constitution and the Hawai'i Constitution. Id. at 497-98, 83 P.3d at 760-61. We did not, however, rule that a trial court must sua sponte advise a

criminal defendant of those rights. We have located no published Hawai'i appellate decision so holding, and we decline to make such a ruling now.

Based upon the foregoing, the Judgment entered by the circuit court on March 6, 2019, is vacated and this matter is remanded to the circuit court for a new trial.

DATED: Honolulu, Hawai'i, April 21, 2020.

On the briefs:

Justin F. Kollar,
Tracy Murakami,
for Plaintiff-Appellee.

John H. Murphy,
for Defendant-Appellant.

/s/ Lisa M. Ginoza
Chief Judge

/s/ Derrick H.M. Chan
Associate Judge

/s/ Keith K. Hiraoka
Associate Judge